## DURKEE v. CENTRAL PAC. R. CO.[*]

### No. 9067; December 23, 1885.

9 Pac. 99.

**Principal and Agent—Declarations, Admissibility Against Principal.**—Declarations by an agent or servant employed to perform a certain duty are not admissible against the principal, unless they are part of the facts and circumstances of some act happening within the scope of the servant's or agent's employment.

**Railroad—Declarations of Engineer as to Cause of Injury.**—In an action of damages for injury to a child by a railroad train, the declarations of the engineer concerning the accident, made from three to five minutes after the casualty happened are admissible against the principal as part of the res gestae.

APPEAL from Superior Court, County of Alameda.

McAllister & Bergin for appellants; H. F. Crane for respondent.

McKEE, J.—On the 2d of July, 1876, M. W. Durkee, a boy four or five years old, was run over by an engine belonging to and used at the time in the service of the corporation defendant. To recover damages for the personal injuries

---

*Reversed in bank. See 69 Cal. 533, 11 Pac. 130.

sustained by the boy on that occasion this suit was brought by his guardian ad litem against the railroad company, on the ground that the injuries were caused by the negligence of the company's engineer while driving the engine, which was attached to a train of cars running on the railroad from San Jose to Niles, in Alameda county. The evidence in the case tended to show that, on the day of the casualty, the train had arrived on the railroad track at the Warm Springs station at 4:35, and, according to schedule time, it was to leave there at 4:36. When it stopped at the station the nose of the pilot or cow-catcher just came to the south end of a trestle-work, which formed part of the railroad track across a creek at the station at a point where a county road, running east and west, crosses the trestle. The train was started on schedule time across the trestle at a speed of about six miles an hour, and, at that rate of speed, it had moved for about twenty feet on the south end of the trestle, when the engineer, seeing in front of him a human head rising up from between the ties, reversed his engine and called for brakes; but the train could not be stopped until the engine went over the boy. It was stopped within thirty or forty feet on the trestle, and the boy was taken out from under the engine, badly mutilated.

The main issue in the case was whether the boy was in such a position on the trestle that the engineer, by looking out in front, along the trestle before starting his train, could have seen him on the trestle, and have avoided the casualty; or whether the boy was so concealed under the trestle as to be hidden from sight until he raised up his head at the approach of the engine, when it was impossible to stop it without going over him. The jury found that there was no contributory negligence on the part of the boy or of his parents, and that the injuries to the boy were caused by the negligence of the engineer in failing to look out in front along the trestle to see that it was clear when he started his train to cross it. The verdict is sustained by the evidence. But it is founded, in part, upon testimony, given by one of the plaintiff's witnesses, of declarations as to how the casualty happened, which were made to him by the engineer about five minutes after the injury to the boy, and about three minutes after he had been taken from under the engine by one of the brakemen, who, at the time of the declarations, had the boy on his arms in

the county road, a short distance from the railroad track. The declarations, as testified by the witness, were: "I asked [the engineer] how it happened, and he said: When he started up the train he was looking up the road, toward Peacock's, to see if anyone was coming down, and when he turned around he saw the boy, and he blew the whistle, but when he reversed the engine it was too late, and he said that they took him out from between the hind trucks of the tender."

The admission of these declarations against the objection and exception of the defendant is assigned as an error. The declarations of a servant or agent, who is employed to perform a duty, are not admissible against the master or employer, unless they are part of the facts and circumstances of an act happening within the scope of the employment, for which it is sought to make the master liable. The facts and circumstances which grow, as it were, out of the act or transaction, and are contemporaneous with it, and serve to illustrate its character, are part of it. Thus, language used at the time of making an assault is part of the assault (MacDougall v. Maguire, 35 Cal. 279, 95 Am. Dec. 98), and declarations characterizing a transaction made "at the very time" of the transaction are part of it: Gerke v. Steam N. Co., 9 Cal. 257, 70 Am. Dec. 650. So, declarations voluntarily and spontaneously made by a person about half or three-fourths of a minute after he was shot by another, as to the person who shot him, have been held part of the circumstances of the shooting: People v. Vernon, 35 Cal. 50, 95 Am. Dec. 49. But declarations made after the fact has been fully consummated are not res gestae: People v. English, 52 Cal. 212; Innis v. The Senator, 1 Cal. 459, 54 Am. Dec. 305; Mateer v. Brown, 1 Cal. 224, 52 Am. Dec. 303. The code rule upon the subject is: "Where the declarations . . . . form part of a transaction which is itself the fact in dispute, or evidence of that fact, such declarations . . . . are evidence as part of the transaction": Code Civ. Proc., sec. 1850.

Under this rule the main difficulty in determining the admissibility of the declarations of the engineer in the case in hand arises out of the consideration of the contemporaneousness of the casualty to the boy and the declarations concerning it. As has been observed: "What lapse of time is embraced in the word 'contemporaneous' is often a question of difficulty.

Perfect coincidence of time between the declaration and the main fact is not of course required. It is enough that the two were substantially contemporaneous; they need not be literally so. The declarations must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as virtually to constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the earmarks of a device or afterthought, nor be merely narrative of a transaction which is really and substantially past'': Alabama G. S. R. Co. v. Hawk, 72 Ala. 117, 47 Am. Rep. 403.

It is upon these legal principles that the American courts have generally decided the question of contemporaneousness of fact and declaration.

In Commonwealth v. McPike, 3 Cush. 181, 50 Am. Dec. 727, objections were made to the declaration of a woman, who, after having been stabbed in her own room, ran bleeding out of the room, up a flight of stairs and into a room occupied by another, where, having fallen on the floor, she lay until a person outside, who heard her cries, went and brought a watchman, to whom she made the declaration. The objections were overruled and the declaration admitted, and it was held, on appeal, that the time when the declaration was made was so recent after the injury as to justify receiving it as evidence. Where it appears, says the same court, that the declarations ''were uttered after the lapse of so brief an interval and in such connection with the principal transaction as to form a legitimate part of it, and to receive credit and support as one of the circumstances which accompanied and illustrated the main fact which was the subject of inquiry before the jury, they are res gestae'': Commonwealth v. Hackett, 84 Mass. (2 Allen) 139.

So, in Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, which was an action upon an accident insurance policy, in which the subject of inquiry before the jury was whether the deceased died from an injury caused by an accident; and the plaintiff in the action gave evidence tending to show that before the alleged accident the insured had arisen from his bed about 12 or 1 o'clock at night, went downstairs and came back,

and when he came back he stated "that he had fallen down the back stairs and almost killed himself"—it was insisted that this declaration was no part of the res gestae. Exactly what time elapsed between the accident and the declaration does not appear in the case, but the supreme court of the United States held the declaration admissible. "In the complexity of human affairs," say the court, "what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. . . . . The res gestae are the statements of the cause made by the assured almost contemporaneously with its occurrence. . . . . The tendency of recent decisions is to extend rather than to narrow the scope of the doctrine."

Hanover R. Co. v. Coyle, 55 Pa. 396, was an action by a peddler, who was run over by a locomotive of the defendant, to recover damages for injuries to himself, his wagon, and his goods. On the trial the plaintiff, against the objection and exception of the defendant, gave evidence of the declarations of the engineer as to the accident; and the supreme court, in passing upon the exception, say: "We cannot say that the declaration of the engineer was no part of the res gestae. It was made at the time of the accident, in view of the goods strewn along the road, by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declaration made upon the spot at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the transaction itself."

To the same effect will be found Waldele v. New York Cent. & H. R. Co., 95 N. Y. 284, 47 Am. Rep. 41; State v. Garrand, 5 Or. 217; Ohio & Mississippi Ry. Co. v. Porter, 92 Ill. 437.

Applying to the declarations of the engineer elicited in this case the doctrine of those cases, we think the lower court did not err in overruling objections to their admissibility as res gestae. The declarations were voluntary statements, made by the engineer while standing in his engine at the place where the casualty occurred, just after the boy was taken out from "between the hind trucks of the tender," and while he was in view, in the arms of the brakeman, who was carrying him to his father's house. Although they were not literally simulta-

neous with the casualty, yet they were obviously elicited by it, and following it in such close connection as to be apparently the spontaneous expression of the natural consciousness of it, while the engineer was still under the heat and excitement of the circumstances in which it happened. Made in such circumstances, the declarations cannot be regarded as an afterthought, nor as the expression of a mere narrative of a transaction which had been consummated and become an event of the past. They were made after the injury had been inflicted, and the transaction in which the cause of the injury occurred was in process of passing away, but had not wholly passed, and was not quite completed. They were therefore part of the transaction and admissible as evidence.

We find no prejudicial errors in the record. Judgment and order affirmed.

We concur: Ross, J.; McKinstry, J.