UTZ et al. v. MICHAEL et al.

No. 9855.

Court of Civil Appeals of Texas. Austin.

Feb. 22, 1950.

Rehearing Denied March 15, 1950.

Power, McDonald & Mell, of Tyler, Looney, Clark & Moorhead, of Austin, for appellants.

Hart, Brown & Sparks, of Austin, for appellees.

GRAY, Justice.

This is an appeal from a judgment over-ruling appellants" pleas of privilege.

The suit is the result of a collision of a truck and a Chrysler Coupe. The accident occurred in Travis County on Highway 81, just south of Walnut Creek and about eight miles north from the City of Austin. At this point the highway runs north and south, and there is a hill or incline extending some distance from the south to the creek. The truck was traveling north and the Chrysler south. Appellant Elvyn E. Utz was the driver of the truck and was accompanied by William Utz and Nolan Higginbotham. The Chrysler was driven by Frank H. Michael, the husband of Marian Clark Michael, and the son of Carl H. and Maude E. Michael, all appellees. Frank H. Michael was instantly killed and was unaccompanied. The three occupants of the truck were not injured, and they were the only eyewitnesses to the accident.

Appellants are residents of Smith County, Texas, and appellees are non-residents of the state.

Appellees seek to hold venue of this cause in Travis County, under exception 9 of Article 1995, Vernon's Ann.Civ.St., as to Elvyn E. Utz, because he was the driver of the truck, and as to Mrs. J. E. Utz as a partner with Elvyn E. Utz or as his employer.

A non-jury trial was had on appellants' pleas of privilege and the same were overruled.

On the morning of November 23, 1947, the truck left Tyler with a load of rose bushes sold and to be delivered to Solo Serve Nursery in San Antonio. These rose bushes were so delivered on the morning of November 24, and were paid for by check. On the return trip, and between San Antonio and Austin, Elvyn E. Utz purchased a load of cedar posts which were loaded on the truck and the journey to Tyler continued. At about 9 o'clock p. m., on November 24, the accident occurred. The truck turned over, the top of the Chrysler coupe was sheared off and there was damage to its left side. Both the truck and the Chrysler came to rest on the west side

of the highway, the right wheels of the Chrysler were some two or three feet off the paved portion of the highway and there were skid marks behind it. The truck turned over on its left side and came to rest north of the Chrysler, partly on and partly off the paved portion of the highway. The posts were scattered but were mostly between the two vehicles.

Pictures taken by the highway patrolman who investigated the accident and which were taken before the truck and the Chrysler were moved, were introduced in evidence. These pictures show the position of the two vehicles on the ground, and cedar posts, damage to the Chrysler, and such injuries to the truck as were visible. Other pictures showing other physical conditions at the scene of the accident were before the court.

The occupants of the truck testified, substantially to the same effect, that the truck was being driven at about thirty-five miles per hour; that the Chrysler as it approached the truck from the north was traveling on the east side of the highway; that the driver of the truck (appellant Elvyn E. Utz) turned the truck first to his right, but because of obstructions near the highway could not proceed farther, turned back to his left, at which time the Chrysler turned right, the truck then turned left and the Chrysler struck the truck near the rear wheels, on its left side, at which time the left wheels of the Chrysler were on or to the east of the center line of the highway.

Mrs. Gladys Bryan testified she and her husband operated a business on Highway 81 at about four-tenths of a mile south from Walnut Creek. On the night the accident occurred she and her husband were standing in front of their place of business and saw a truck loaded with cedar posts pass going north. The posts were piled rather high and were leaning to the left or west. After being qualified to testify as to the speed of the truck, she estimated the truck was traveling at between 55 and 60 miles per hour. It was swerving back and forth across the highway and was gaining speed as it went down the hill. As she turned around to go in the house she heard a crash and a horn blowing. This was the only truck that passed from the time she saw it until she heard the crash.

Edward Gault lived near the scene of the accident, and said he heard brakes or tires "squealing", heard a crash and then an automobile horn honking. He went to the scene of the accident and found the truck and the Chrysler in the positions above related.

The highway patrolman who investigated the accident and who reached the scene about ten or fifteen minutes after it occurred, expressed the opinion that the point of contact of the truck and Chrysler was about at the point where the Chrysler was when he got there, that is there were two wheels of the Chrysler on the west shoulder of the highway.

Though the judgment of the trial court does not find the facts, we must sustain the judgment if there is evidence to support it. From the evidence, we think the court could find, as he undoubtedly did, that the collision occurred west of the center line of the highway.

It is well established that the driving of a motor vehicle in the wrong traffic lane and there striking another vehicle is an affirmative act of negligence within the meaning of exception 9 of Article 1995, supra. Hill v. Connors, Tex.Civ.App., 219 S.W.2d 587. This being a violation of the law of the road, Vernon's Ann.P.C. Art. 801, it is an affirmative act of negligence and is a trespass within the meaning of said exception. Schuller v. Fears, Tex.Civ.App., 67 S.W.2d 343.

The business arrangement between appellants was testified to by them and Leo Utz, a son of Mrs. J. E. Utz and brother of Elvyn E. Utz. Such testimony is to the effect that Elvyn E. Utz plants wild rose bushes on land leased by him. These bushes are later budded, inspected by an inspector for the State Department of Agriculture, and afterwards the bushes are dug up, graded and "heeled" (put in bundles, then arranged in rows, and the roots covered with dirt). At such time the bushes were divided equally—each party's bushes placed in separate heels. Mrs. Utz paid for the budding, paid the inspection fee,

furnished one-half the fertilizer, one-half of the gasoline used by the tractor, and paid one-half the expense of heeling. Mrs. Utz testified she and her son grew roses on the halves, that she had them advertised, that "* * * just according to what the orders are, we just send them out. Sometimes we have big sales and ship them out." She further said she did business in the name of Fairview Nursery, and is the same person as "J. E. Utz, Proprietor of Fairview Nursery," which appears on the stationery of the nursery. That Elvyn E. Utz has no interest in Fairview Nursery.

In the fall of 1947 a representative from Solo Serve Nursery went to Tyler and purchased the rose bushes delivered to it on November 24. He made this purchase from, or through, Elvyn E. Utz, but said he was dealing with Fairview Nursery, "because that is the way he does business in the name of Fairview Nursery and his bills are on the stationery of Fairview Nursery." Mrs. Utz testified the rose bushes were inspected for Fairview Nursery. The invoice for the rose bushes delivered to the Solo Serve Nursery was on the stationery of Fairview Nursery, the check given in payment for them was made payable to Fairview Nursery, Tyler, Texas, and was endorsed "Fairview Nursery. J. E. Utz." There was at least one other check issued by Solo Serve Nursery, payable to Fairview Nursery, Tyler, Texas, and endorsed "Fairview Nursery. J. E. Utz." Solo Serve Nursery dealt with Elvyn E. Utz in each instance.

The truck involved in the accident was registered in the name of J. E. Utz and the certificate of title shows its owner to be J. E. Utz. There was also introduced in evidence a power of attorney executed by J. E. Utz authorizing Elvyn E. Utz to sell the truck.

Appellants introduced evidence to show that Elvyn E. Utz was known as Jack Elvyn Utz and as J. E. Utz.

We think the evidence presented an issue of fact for the trial court to determine who the owner of the truck was and, also, whether or not Elvyn E. Utz was acting as the agent or employee of Mrs. J. E. Utz, or whether he was acting as a partner, or acting individually, in delivering the rose bush-es to Solo Serve Nursery. As to these issues there was both direct and circumstantial evidence before the trial court, and, in reaching this conclusion, he could consider both. Houston Natural Gas Co. v. Kluck, 139 Tex. 491, 163 S.W.2d 618.

We think the trial court was justified in concluding from the evidence before him that (1) a trespass was committed by Elvyn E. Utz in Travis County, (2) that when he committed such trespass he was either an employee of, or a partner with, Mrs. J. E. Utz, and (3) was then engaged in the furtherance of the business of the partnership or of his employer. For these reasons the trial court's judgment overruling the pleas of privilege was proper. Brown Express v. Arnold, 138 Tex. 70, 157 S.W.2d 138; Dorsey v. Springfield Fire & Marine Ins. Co., Tex.Civ.App., 187 S.W. 2d 91.

Appellants complain that appellees' controverting plea is not sufficient for the reason that the affidavit thereto was made by appellees' attorney. The affidavit stated: "* * * that he is cognizant of the matters of fact set out in the above and foregoing first amended controverting plea, that he is duly authorized to make this affidavit, that the foregoing first amended controverting plea and every statement and allegation contained therein, including the allegations of plaintiffs' first amended original petition, are true and correct."

We think the affidavit is not subject to the exceptions urged against it. Evans v. Jeffrey, Tex.Civ.App., 181 S.W.2d 709. Under the peculiar facts of this case, appellees being non-residents of the state, there being no eyewitnesses to the accident, except appellant Elvyn E. Utz and the parties with him at the time, one of whom was his brother and the other at least a recent employee, we think the attorney the proper party to make the affidavit—even though the affidavit on its face speaks for itself. It is in this kind of situation that Rule 14, Texas Rules of Civil Procedure has a necessary and proper application.

We have examined all points urged by appellants, and we find no error presented. The judgment of the trial court is affirmed.